Good morning, ladies and gentlemen. Our first case for argument this morning is Manhart v. WESPAC Foundation. Mr. Frank. Thank you, Your Honor. May it please the Court, Ted Frank for Appellant Christopher Manhart. In cases such as Morris v. Faulkner, Illinois courts recognize the freedom of locomotion to come and go or to stay. Mr. Frank, I understand you would like to discuss the merits, but we would like to discuss jurisdiction first.  The question is, is there federal jurisdiction? In order to avoid 1332d-4, you have defined the class to include only citizens of Indiana, but what your brief doesn't mention is how many citizens of Indiana were caught in this traffic jam and what are the damages per person caught. Those matters need to be addressed. So how many citizens of Indiana were caught? It's not just Indiana. It's every state that isn't Illinois, so. Okay, Hawaii as well. How many citizens of Hawaii were caught? Our position would be that half of the people going to O'Hare were leaving, were not from Chicago. Is this based on anything? If you stand on an overpass spanning I-190, what percentage of license plates are from states other than Illinois? It wouldn't necessarily be that many, but there are. Indeed, not that many. So what is the basis for any other estimate of the number of people not from Illinois caught in this traffic jam? We need over 100. There are thousands of people who are trapped in the traffic jam. Yeah, well, I did a back-of-the-envelope calculation and it came to about 7,500, assuming the jam extended back for three miles. All right, what percentage of those cars are not from Illinois? That will tell us how many people are in the class, and then we can deal with damages per class member. Well some of the passengers would also be from out of state. We would need to know what is the average number of people per car on I-190, but I don't see an estimate of that in the record either. No one contested that there were over 100? No one contested? It's not a question of whether jurisdiction is contested, as you well know. Whether or not jurisdiction is contested, we have an independent obligation, and I can't see in this record any estimates, even implausible estimates, even back-of-the-envelope estimates, of the number of people not from Illinois who were caught in this traffic jam, and I can't see any statement about what the average damages awarded in Illinois courts for people caught, not necessarily in traffic jams, but if you have a dispute among neighbors and one parks a car in front of the other's garage, what are the damages awarded in Illinois courts for that? I can't see any of that. Can't see any of it. In cases such as Cobell, we can at this, even at this stage, correct the complaint. 28 U.S.C. 1653 allows jurisdictional allegations to be amended even on appeal, but what we've got in the record now does not support federal subject matter jurisdiction. Maybe a suitable amendment under 1653 could do the trick, but it would have to be supported in some way. And we will submit a supplemental letter to the court on that. All right. I will be raising this same matter with the Appellees. Please proceed. Thank you. The district court misapplied the restatement, the law of causation. Which restatement, by the way, are you relying principally on the third or on the second? I think we went under others. The district court thought it was clear you lost under the second, and the third is more favorable to you. So your brief mentions the third. I assume you're relying on the third. What has the Supreme Court of Illinois said about the third restatement of torts? It has cited the third restatement of torts, as has the U.S. Supreme Court. The U.S. Supreme Court doesn't count for a difference in making Illinois law. I agree. I'm happy to defend this case under the second restatement, and to the extent the second restatement arguably disagrees with us, Illinois courts disagree with that part of the second restatement. So, Morris v. Faulkner would say that maybe this isn't false imprisonment, but it's actionable restraint on freedom of locomotion. And I think illustration 11 demonstrates that the district court's reading of comment D was too crabbed. And the third restatement, I think, provides interpretive gloss on the second restatement. I don't think it's changing the second restatement, I think it's clarifying the second restatement with respect to this aspect. And while the third restatement uses different language here and there, and very much more clearly supports us, I don't think it changes what the second restatement does, and I think we satisfy the second restatement. Mr. Frank, when did, at what point in time in your mind did the confinement actually take place? So, you know, the way traffic usually goes is, in a traffic jam, we've all been there, it kind of slows down, it then picks up a little bit, it slows down, it comes to a crawl, right? You're surrounded by people or maybe you're on the side. At what point on the petitioner's trip do you think he was actually confined? At the point past the last exit, he could have exited without being trapped in traffic. At that point, he is confined and doomed to be confined. And do you know when that was on our roads? I don't have, at this point in time, an exact time stamp on that. But for example, if someone unlawfully grabs your arm and you're resting yourself away, you are unlawfully confined even though you eventually manage to escape. And I think the same holds true here. He's unlawfully confined as he's trapped in the gridlock, he inches his way forward within that confined space, he eventually escapes a considerable time later, but he's unlawfully confined within that stretch. And do we know, for example, and the reason I ask is because the configuration of the 990 Spurdo hair, for a while it's confined and then it kind of opens up a little bit as far as the shoulder. There's kind of different facts that might go into it, but do you also know whether at the time that he was confined, what lane he was in? Not off the top of my head. He was passed an exit point and he was trapped on the highway for a considerable amount of time. Okay. And I don't think there's any allegation in the complaint about exactly when he felt he was confined, what location he was in when he was confined, or what lane he was in when he was confined. That is correct. And the reason I ask is because in the briefs there's some mention that he couldn't take advantage of the shoulder, and we don't even know the state of the shoulder at the time because of the traffic around him. And so I was wondering if there were any allegations that might support such contentions. That's at this stage a reasonable inference from the complaint. It's a reasonable inference from his conclusory statement that he was confined, but was it a reasonable inference from the rest of the allegations? Even if he pulls over onto the shoulder, he's confined on the shoulder within the Illinois concept of loss of freedom of locomotion. He's being forced over to the shoulder. But even on the shoulder, he's not going where he wants to go, which is to the airport. Okay. So I guess I'm just trying to understand what you're saying this morning. So what you're saying, this is not a confinement case. It's Illinois uses different words at different times to describe what has happened to my clients. Sometimes they call it freedom of locomotion, sometimes they call it unlawful confinement. Right, but the briefs themselves seem to really focus, all the briefs seem to focus on this notion that he couldn't go anywhere. In other words, he was confined, not that he couldn't go where he wanted to go. And I'm wondering whether it seems like it's a slightly different framing of the claim, the legal theory. And I know you don't have to plead legal theories, but slightly different framing of the legal theory, at least this morning from what I heard. Well, there's liability under both scenarios. So even if we draw a different inference that he could pull over to the shoulder, and now keep in mind, he cannot leave his car on the shoulder. That's unreasonable risk to his chattels. But that would still be under that scenario actionable. Within the gridlock, that's confinement. So now what you're saying, you're offering kind of alternative theories. That's correct, Your Honor. I'll reserve the rest of my time for rebuttal. Certainly, counsel.  Good morning, and may it please the court. Andriana Kostanek on behalf of Defendant Appelli's Tides Center. And then there will be two attorneys arguing for me on behalf of the defendants other than Tides. So let's start with jurisdiction, as Your Honor noted. You are absolutely correct that there's no estimate of the number of passengers outside of Illinois who were affected. There's a conclusory allegation that it's more than 100 in the class, but no estimation or substantiation of the damages suffered other than those conclusory allegations. So we recognize that this was not an argument raised below, but it cannot be weighed. The question that every appellate brief is supposed to address, and yours doesn't, Mr. Frank's doesn't, at least his addresses the 1332 D4 problem. But getting to $5 million and estimating the number of non-Illinois citizens, nobody tackles. Yes, Your Honor. And we'd be happy to tackle it in supplemental briefs if that would be suitable to you. We're obviously going to need supplemental briefs. But I think that it's the similar problem to the standing issue we raised, that there's not a substantiation of the impact. No, it's a completely different problem. For standing, you just have to show some loss, even a trivial one. For subject matter jurisdiction, you have to show enough people to be in a class and $5 million. There's a big gap between $1 and $5 million. Agreed, Your Honor. And for that reason, we think that there's no federal jurisdiction. And we believe that there shouldn't be an allowance of an amendment here, keeping in mind that this is the second amended complaint. He's had two tries before. He hasn't fixed really fundamental pleading issues with his allegations or with the jurisdictional defects. And if I may point out just two additional jurisdictional defects, one, traceability for Article III purposes with respect to tides in particular. Traceability for Article III requires that there be a meaningful causal link between the alleged injury and the actions of that particular defendant that is lacking here. So for example, the Supreme Court in Simon addressed against a government defendant whether there was a causal link of some sort between the hospital's particular conduct in that case and the servicing of patients there and the government policy and found that that causal link was speculative at best. And the same thing is true here, where there's no allegation in the complaint that the actions of Tide Center, which was setting up a nationwide, allegedly setting up a nationwide bail fund and legal defense fund, influenced any protester in Illinois, caused them to engage in a protest. There is certainly a separate question whether any given defendant in this melange of defendants was responsible, whether damages can be traced to that defendant. But that's still a different question from whether there is standing, that is whether the plaintiff suffered any loss at all, and whether we can get to $5 million. Absolutely, Your Honor. I recognize that. I was making a separate argument about traceability, but I recognize the CAFA problem that you're identifying, that there should not be federal jurisdiction under that as a first and foremost basis, and if we could leave that— If you would use real words, that would help. Sure, Your Honor. Thank you. So, there's also this Article III problem, separate and apart from the issue of whether there's a class of 100 and alleged damages that suffice under the statute. And then we separately have an issue of personal jurisdiction. So, as the plaintiff pleads, Tide Center is a California entity with offices in California. They are required for specific jurisdictions who have targeted Illinois in some fashion to have— In that respect, could you maybe elaborate a little bit on precisely what your client offered folks in the country who were involved in this kind of activity? The briefs I found very vague on that question. Did you just offer bail support, or did you offer other kinds of legal support? And if so, what were they? Before you answer, could everybody hear Judge Ripple? Can you turn up the volume on Judge Ripple's feed? Sorry about that, Judge Ripple, but let's make sure everybody can hear you. Would you like me to repeat the question? First, let's get the volume up. We'll give you some time back. Okay. Well, that looks like as far as it can go here. Judge Ripple, could you say a few things, and we'll see if the volume fix worked? All right. How's it going now? Oh, that's fine. Okay, good. I'll repeat my question to Ms. Gistanek then for everyone. I was concerned about the description of her clients' offered services to individuals who are participating in this kind of conduct. At times, the briefs seemed to indicate it was simply bail support. At other times, they talk about other legal services, and that may well make a difference in the issues she's raising. And so I wondered if she might clarify exactly what her client was offering. Yes. Yes, Your Honor, certainly. So the brief is vague if only because the complaint is vague. So the only paragraphs that I'm aware of that address this in the complaint are paragraphs 63 and 64, where it's alleged in passive language, a bail fund was also established, and it explains in the next sentence that bail fund could also be used to provide arrested activists with counsel. And then it's described as having a title that refers both to bail and legal defense. And then it's passively referenced as being posted on a website, but of course not attributable to TIDES because it doesn't allege that TIDES or CGE actually engaged in posting that website or posting that link on the website. So, you know, we recognize that the allegations encompass both bail and the legal defense component of this. Both of them, nonetheless, are woefully insufficient to establish specific jurisdiction in Illinois by the allegations. It's a nationwide defense fund. There's no allegation that TIDES Center or CGE even knew that there was going to be a protest specifically in Illinois or there was any agreement to have that protest in Illinois and the like. So from the perspective of needing that meaningful connection and a purposeful availment to Illinois, it's lost. If I may move on briefly to the merits, if it suits the court. For many of the same reasons that Judge Lee was noting in his questions to counsel on the other side, there is no false imprisonment tort here. I think the district court got it exactly right under Illinois law, which has adopted this second restatement, but not formally adopted any of the provisions in question of the third restatement that are relevant here. You know, the counsel notes that the Illinois courts have cited the restatement. I'm not aware of them citing the section eight of the restatement, third restatement, which remains, I believe, in a tentative draft form. But they have... It's no longer tentative. It's been approved by the ALI more than a decade ago, it turns out.  So it's... Nonetheless, what we have in Illinois law, I believe, is a distinction based on the second restatement between a person and their vehicle for purposes of confinement. And of course, otherwise the rule would be somewhat absurd, right? Traffic jams that result from conduct of another person, whether it's somebody sitting at a stop on a green light and you're stuck behind them, or road construction that closes, you know, lanes down and thus causes a traffic jam, are all going to be the basis of this tort. And it results in... But here we're talking about an intentional blockage of the road by private individuals by the state. Doesn't that make a difference? I don't think it does, Your Honor. So the second restatement, comment D to section 36, says it doesn't matter when you're talking about the blockade of the highway, whether that act is intentional or not. So I'm not sure that it makes a difference. But I also would note that under the... I'm sorry, Your Honor. Go ahead. Well, it seems to me we're talking about more than a blockade, the closing of a road here. You know, we're talking about an intent to stifle individuals, private individuals, from proceeding anywhere. They talked in the literature about wanting to stop the arteries of commerce and what have you. I mean, it's an intent to limit the freedom of the individuals on the road. Well, taking that question as true, just the factual assumptions of it, I still don't think that that equals the confinement that is actionable under the law. So Illinois courts and the restatement, it's both, distinguish between the confinement of a person and the confinement of a vehicle. And there is no case that the plaintiff can cite where the confinement of a vehicle, where the person still remains free to leave their vehicle, constitutes actionable confinement. And Makaro, I believe is the name of the case, where the individual was tricked out of her keys at a dealership, but her purse remained in the car, and she stayed with the car voluntarily because of the impact of not having her purse on her. And the court noted, like, this is not the type of tort that is cognizable or the type of action that's cognizable in tort there. Is it reasonable, though, to think that if you're stuck in a traffic jam on the expressway, that you can just get out of your car and leave it there? Well, so can I just first say that I think the framework does not require you to address the reasonableness of escape until you get to the point where the court has determined that there is actionable confinement. So two separate questions. And what I believe Illinois courts are saying is they are not willing to recognize the choice to stay with your car where your person is still able to move as being actionable confinement, regardless of the reasonableness of the means of escape. But even taking it at face value that we're talking about, the escape method, I think that the allegations are woefully deficient. So, for example, plaintiff's counsel notes he couldn't have left his car by the side of the road because of risk to chattels. But that's not alleged in the complaint, that there was any personal injury, harm to him or harm to his vehicle in any particularized way as a result of leaving his car. And I would note that page 8 of his opening brief, he frames the risk or the escape question as he seems to acknowledge, page 8, that he could have gotten to an exit. He says something along the lines of, you know, they ask that I would have, you know, been able to progress to an exit and leave my car, but I wasn't required to do that or the plaintiff wasn't required to do that. And I think that the logical response to that is it seems to acknowledge that he could have gotten to an exit, could have left his car, whether on the side of the road or otherwise. Is that the kind of thing that we normally would think would be resolved during discovery? I suppose, but, you know, it needs to be cognizable as a tort. And, you know, under 12b-6, he needs to make sufficient allegations to establish that if these facts were true, it would be actionable. And for all the reasons that the district court held and we're going through today, I don't think it rises to that level, whether on the tort of false imprisonment or on the tort that's founded in Section 1416 of the Vehicle Code. And unless there's questions about that second cause of action, I'd be happy to, I see my time is up. I do have a question about the negligence based upon the statutory, alleged statutory violation. I think that, you know, in Illinois law, if you violate a public safety statute, there's a prima facie basically understanding that you've stated a negligence claim. And it seems to me that to the extent that, you know, there's the arguments back and forth, that I wonder what your view is with regard to that particular theory of recovery. So the test, I believe, is that when we're talking about a public safety statute, which the district court assumed was true of 1416, which is the statute that's invoked in this negligence claim, that it still needs to be of the type, the injury needs to be of the type that the statute was intended to protect against. And we think that the district court got it exactly right that this injury that is being complained of, which is loss of time, impact of being stuck in traffic, you know, missing a flight, are not the types of injuries that this public safety statute, if you assume it was, was meant to protect. And there's a little bit of a disconnect between assuming it's a public safety statute to get to that inquiry and then saying, but the harms that it's protecting against are more than the public safety harms in question. And if there's no further questions, we ask that this court adjourn. Thank you, counsel. Mr. Herman. May it please the court. My name is Josh Herman, and in the proceedings below, I represented National Students for Justice in Palestine, or NSJP, and here, before this court, I am appearing on behalf of NSJP along with Kelly's... If you use real words rather than initialisms, it would help us. I will, along with Kelly's Jewish Voices for Peace dissenters in the individual defendants. While we believe that the sprawling allegations that have continued to evolve even to this point against those defendant appellees fail to meet the most basic pleading standards by lumping entities together, jumping from speculation to assumption, we also believe that the straightest path forward in this case is to affirm on the district court's rulings on the failure to state a claim under Rule 12b-6 as the substantive torts. We have in our briefs fully adopted the arguments made by Tides in those regards. We acknowledge, Your Honor, the jurisdictional issues that will need to be further addressed, and I wanted to confirm that after hearing Tides' arguments, we continue to adopt all of those arguments and would stand on the positions asserted during Tides' argument. And if there's no further questions, which I'm happy to entertain on behalf of any of the defendants that I represent on this appeal or in this argument, I'll sit down. Thank you. Thank you, Counsel. Mr. Herbst. Thank you, Your Honor. Bob Herbst for Westpac. I'd like to make five quick points in less than two minutes. First, there's no personal jurisdiction over Westpac. Plaintiff conceded below that Westpac only provided funds to NSJP in New York and does not allege that Westpac did anything in Illinois or intentionally directed to Illinois, so there's no purposeful availment. Two, Westpac cannot be liable for any of the derivative torts alleged in this case because Westpac is not alleged to have done anything concerning this protest. It did not allege to participate in it, organize it, promote it, send money to NSJP specifically to fund it, or even knew about it in advance. And all of those derivative torts, conspiracy aiding and abetting, acting in concert, require actual knowledge of this protest, intentional agreement to commit the underlying torts, and substantial assistance. Third, plaintiff has not pleaded plausibly the allegation, which is actually false, so that NSJP and Westpac are one rather than two separate entities. As an allegation pleaded on information and belief, it requires specific supporting factual allegations that might provide reasonable grounds to believe that it is true. According to his own commentator, Colvin, none of those facts are alleged here, that NSJP's employees became Westpac's employees, that its bank account belonged to Westpac, that Westpac paid all of NSJP's expenses directly to NSJP's vendors, or that Westpac's insurance policies applied to NSJP's staff. Have we had discovery on these issues? Pardon? Have we had discovery on those issues? No, there hasn't, but there's not a plausible allegation under Iqbal and Twomley related to that, Your Honor. It's all on information belief. Fourth, there is no legal authority for plaintiff's alternative negligence or recklessness claim, which would impose a duty of care, a legal duty of care to a tort plaintiff that does not exist either in federal or Illinois law. Imposing such a duty on fiscal sponsors would be so burdensome and unmanageable that it would threaten the institution of fiscal sponsorship itself, which has a long and salutary history in this country. And the fifth point, Your Honors, is that Westpac has, plaintiff has the same traceability issues with respect to Westpac as it does with respect to tithes because the plaintiff has no cognizable injuries that are directly traceable to Westpac's own condo. So, I'd like to just expand on this point about the imposition of this legal duty of care on fiscal sponsors just from their general fiscal sponsorship of a separate entity. The 1968 revenue ruling that counsel relies on in terms of federal law has, first of all, there's no case or no statute providing such a duty, but that revenue ruling does not provide in any way a duty to control or supervise the actual activities of the fiscal sponsoree. And if there were any duty, it would only be to the government in return for the tax exemption. And the other two district judges, federal judges who have looked at this issue, have both decided in Hellman and Weinberg that there is absolutely no legal authority for this. And under Illinois law, counsel relies on Simpkins. The threshold question in that case, in every Illinois common law duty case, was whether the defendant, Westpac, by its own act or omission contributed to a risk of harm to this particular plaintiff. Westpac did not because it's not alleged to have done anything to advance this protest, nor were there any recognized special relationships that established a duty running from Westpac to Manhart. Simpkins says that a duty to protect others from a foreseeable risk of injury does not establish a duty to the world at large, but that is precisely what the plaintiff is asking this court to impose. All three judges who have considered this have declined to do so, and we ask this court to do the same. Thank you, Mr. Herbst. Thank you. Anything further, Mr. Frank? The Parade of Horribles Tides presents on false imprisonment liability or even negligence liability wouldn't apply because, again, as Judge Ripple pointed out, it's the intentional confinement that matters. So holding a concert or having a traffic accident and that causes gridlock, that wouldn't be actionable. There wasn't an intent to confine, which is what happened here. Would recklessness be sufficient? I'm sorry? Recklessness? It wouldn't be sufficient under 1416. So to the extent that liability is imposed through the breach of the duty to follow 1416. And I acknowledge Illinois negligence law here is far from clear. Sometimes they call it prima facie. Sometimes they call it common law. So they've applied COLLADA to data breach cases, extending public safety to that sort of thing and saying that the statute meant to protect people's personal information. There's a case called Kalper v. Nyberg in the Illinois Supreme Court where the court clerk breached a statutory duty to correctly calculate a prisoner's good time credits and he was held several months too long and that unlawful confinement was counted as negligence. And they said, well, maybe this isn't COLLADA, but the breach of the statutory duty would be common law negligence. So the breach of the duty is the intentional blocking of the traffic. And Illinois is not shy about imposing liability or expanding the scope of negligence to the So everything we learned in 1L isn't necessarily what Illinois is doing. And I think we satisfy Illinois case law on applying the negligence cause of action here for both drivers and passengers. Well, the scenario that I have in mind is, for example, let's say that there's a drunk driver and he causes an accident, right? He's convicted of DUI, right? And because he's a drunk driver, ran into someone on the highway, there's a two-hour backup, okay? Would the tort be, would it apply to him as well? Because he violated the drunk driving statute and then he went on the road and he was convicted of drunk driving and thereby causing this huge traffic jam. You would have to run through the Simpkins test on duty on that. So I think there's a foreseeability issue. I think there's a, the fourth prong issue, what are the effects if you expand it to this, right? Then the worst victims might not get compensated because the insurance will get taken up by the thousands of people getting smaller damages behind them. So I think that would be a different scenario, but I couldn't tell you what Illinois courts would do for that particular hypothetical. I don't think it's not colorable, but I think it's a tougher road to hoe than what we have. Going to what Westpac is arguing here, it's kind of extraordinary because the reason an exempt entity can funnel money to a non-exempt entity is because they represent to the IRS and to the world at large, hey, we have this fiscal sponsorship for something that doesn't have its own 501c3 status that is non-exempt, but we can give money to them and you can give money to us to give to them because we have control and supervision, because they are under our corporate umbrella, because they have become part of us. And you're not actually giving money to the non-exempt entity, you're giving money to us, the exempt entity, and we're controlling and supervising this project under our corporate umbrella. Now, as best I can tell, Westpac is arguing that they're committing federal tax fraud, at which point we go to our count nine backup that even though somebody could go to jail if they're saying, we're just acting as a conduit, we told the IRS that we were controlling and supervising, but we had no control or supervision over this non-exempt entity that we're letting everybody give tax deductible money to. Then I think the Simpkins test makes it really easy, and I don't think it creates a burden at all, because the burden is to do, follow the law and control and supervise the non-exempt entity that you're not supposed to be acting as a conduit for. I think we can satisfy the court on the 1653 supplemental briefing, so I really would like to defend the false imprisonment and the negligence issues if the court has other questions on that. But we've alleged an intentional tort with punitive damages. This court has affirmed $186,000 damages in 2003 money for recklessness, for even though the underlying damages were very minor. So if we can demonstrate or at least plausibly plead the number of plaintiffs, we would easily meet the five million number. And with that, I'll return matters to the court. Thank you, Mr. Frank. The court directs the parties to file supplemental memoranda in this case, addressing the question whether there is federal subject matter jurisdiction. They are due in the next 14 days. Plaintiffs can, of course, also take advantage of 28 U.S.C. 1653. When those memos are received, the case will be taken under advisement.